Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARÍA C. ALCALÁ RODRÍGUEZ<br><br>Recurrida<br><br><br>v.<br><br><br>IP MOTIVE, LLC H/N/C C & F BELLÍSIMA, IP SUCCESS CORP., BELLÍSIMA C & F<br><br>Recurrente | KLRA202400494 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor (DACO)<br><br>Caso número: PON-2023-0005204<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de octubre de 2024.

Comparece ante nos la parte recurrente, IP Motive, LLC, mediante revisión judicial y solicita que revoquemos la determinación emitida por el Departamento de Asuntos del Consumidor el 16 de julio de 2024, notificada el 6 de agosto del mismo año. Mediante el referido dictamen, la agencia declaró Ha Lugar la querella radicada por la parte recurrida, María C. Alcalá Rodríguez.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida.

### I

El 23 de abril de 2024, María C. Alcalá Rodríguez (Alcalá Rodríguez o recurrida), radicó una *Querella* sobre fraude en contra de IP Motive, LLC h/n/c Bellísima C&F (IP Motive o recurrente). En esencia, alegó que IP Motive había facturado dos transacciones a su tarjeta de crédito en el mismo día. Arguyó que tal actuación ocurrió

sin su conocimiento del monto total de las transacciones. Sostuvo que ello le ocasionó severos daños emocionales y deterioro mental. En virtud de ello, solicitó la devolución del dinero.

Citadas las partes para la celebración de la vista administrativa, el 18 de junio de 2024, la representación legal de IP Motive solicitó la posposición de la vista pautada para el 25 de junio de 2024.[1] Fundamentó su solicitud en que, en dicha fecha, se encontraría impartiendo un curso de verano en la Universidad de Puerto Rico, Recinto de Río Piedras. Informó que el curso culminaría el 28 de junio de 2024 y que estaría disponible del 1 al 12 de julio del mismo año, así como a partir del mes de agosto de 2024.

Evaluada la solicitud de transferencia, el 20 de junio de 2024, el Departamento de Asuntos del Consumidor (DACO) determinó que la vista administrativa pautada para el 25 de junio de 2024 seguía en pie y no sería recalendarizada.[2]

En desacuerdo, el día siguiente, la representación legal de IP Motive presentó una reconsideración.[3] Indicó que fue contratado por el recurrente el 18 de junio de 2024 y reiteró las razones por las cuales solicitaba la transferencia de la vista. Argumentó que había realizado dicho petitorio oportunamente y que las causas allí esbozadas justificaban la suspensión de la vista administrativa. Sostuvo que, si no se suspendía el señalamiento, se vería imposibilitado de representar a su cliente. En la alternativa, arguyó que, ante la denegatoria del petitorio de transferencia, estaría violentando la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico,* Ley Núm. 1-2012, según enmendada, 3 LPRA sec. 1854 *et seq.*, toda vez que, como empleado público, no podía realizar otras actividades en horas lectivas que interfirieran con sus

---

[1] Apéndice del recurso, pág. 12.
[2] Íd., pág. 15.
[3] Íd., págs. 16-18.

responsabilidades primarias como profesor universitario. Por último, sugirió que la vista se celebrara durante una (1) hora por videoconferencia para, de esa manera, no interrumpir severamente sus responsabilidades académicas.

Así las cosas, el 25 de junio de 2024, se celebró la vista administrativa por videoconferencia, según solicitado. No obstante, la parte recurrente no compareció.

Aquilatada la prueba documental y testifical desfilada en la vista, el 16 de julio de 2024, notificada el 6 de agosto del mismo año, el DACO emitió la *Resolución* que nos ocupa, mediante la cual declaró Ha Lugar la *Querella* radicada por Alcalá Rodríguez.[4] En el referido dictamen, la agencia recurrida consignó las siguientes determinaciones de hechos:

1. La Sra. María M. Alcalá Rodríguez, en adelante la parte querellante[,] es una persona de edad avanzada.

2. Bellísima o IP Motive, la parte querellada está ubicada en el primer nivel de Plaza del Caribe en Ponce.

3. El 15 de noviembre de 2023, estando en dicho centro comercial[,] la querellante pasó frente a la tienda Bellísima C&F operada por IP Motive[,] LLC.

4. Luego de pasar a la tienda[,] le ofrecieron un facial gratis. Al salir del facial[,] las empeladas de la tienda le mostraron productos los cuales[,] según indicó la querellante[,] estos eran gratuitos.

5. Luego se percat[a] que los faciales no eran gratis[;] tenían un costo de $25.00 dólares cada uno[.] [E]n adición[,] cuando llegó a su casa[,] se percató que los productos tampoco eran gratis, e incluso que el costo era bien alto.

6. El costo de los productos que le vendieron a la parte querellante tuvo un costo *[sic]* de once mil ciento cincuenta dólares ($11,150.00). El cargo se le realizó a la tarjeta de crédito "master card" del Banco Popular de Puerto Rico.

7. El estado de cuenta de la tarjeta de crédito "master card" propiedad de la querellante indicó que[,] el 15 y 16 de noviembre de 2023, se realizaron dos transacciones con los números 80001836201

---

[4] Apéndice del recurso, págs. 1-11.

CLASS 2 – Bellísima C&[F][,] San Juan PR[,] por nueve mil cuatrocientos setenta y siete dólares con 50/100 ($9,477.50) y otra transacción número 80001836250 CLASS 2 – Bellísima C&[F][,] San Juan PR[,] por la cantidad de mil seiscientos setenta y dos dólares con 50/100 ($1,672.50).

8. La parte querellante desconocía que le harían un cargo tan oneroso a su tarjeta de crédito.

9. Una vez en su residencia[,] se percató que todos los productos que le entregaron estaban abiertos, por lo que la parte querellante se personó a la tienda. Una vez allí[,] les solicitó la devolución del dinero y les entregó los productos. En la tienda se negaron a hacer la devolución del dinero, indicándole que "eso no era así". La querellante, *[sic]* se sintió engañada[,] por lo que se encuentra muy afectada por ello.

10. La política de devolución de la tienda [(]parte querellada[)] indica lo siguiente:

NO REFUNDS, NO CASH/CREDIT BACK EXCHANGES WITHING *[sic]* 14 DAYS[.] NO SE HACE DEVOLUCI[Ó]N DE DINERO, NI CR[É]DITO A LA TARJETA. SOLO UN CR[É]DITO A LA TARJETA QUE DEBE SER UTILIZADO EL MISMO D[Í]A DE CAMBIO. CAMBIOS DE CR[É]DITO SOLO SE PUEDEN HACER EN EL MISMO DEPARTAMENTO DE LA COMPRA ORIGINAL. 14 D[Í]AS PARA CAMBIO DE MERCANC[Í]A[.] VENTA FINAL.

11. La parte querellante se presentó a la institución financiera Banco Popular y le explicó lo que sucedió[.] [L]a institución financiera le recomendó que realizara un préstamo personal para poder cumplir con los pagos[,] ya que eran muy altos para el ingreso que recibía la querellante[;] el seguro social.

12. La parte querellante testificó que no tenía idea del costo de los productos que le vendieron, por lo que no entendió lo que le facturaron. Al realizar el cargo a la tarjeta de crédito de la querellante[,] esta no fue debidamente orientada.

13. La hija de la querellante[,] María Garc[í]a Alcalá, testificó que su madre era una persona funcional e independiente, normal para su edad, antes de los eventos con la parte querellada. Luego de la venta de los productos[,] ha desmejorado mucho su salud mental. Se pierde y no sabe dónde se encuentra. Esta situación le ha generado mucha ansiedad y estrés a la parte querellante.

14. Motivada por los hechos antes esbozados[,] el 23 de abril de 2024, la parte querellante acude ante este Departamento presentando la querella de referencia. Solicitando como remedio la devolución de la cantidad de once mil ciento cincuenta dólares ($11,150.00).

15. [...]. (Énfasis omitido).[5]

En particular, el DACO determinó que estaba claramente establecido por la prueba desfilada que Alcalá Rodríguez realizó la compra en cuestión sin comprensión total de lo que estaba adquiriendo. Sobre ello, concluyó que el bien objeto de la acción de epígrafe nunca iba a utilizarse para el fin adquirido, ya que tal fin nunca fue comprendido por Alcalá Rodríguez. Por otro lado, destacó que IP Motive en ningún momento intentó asumir su responsabilidad. En vista de ello, el organismo administrativo resolvió que, en el caso de autos, medió dolo.

En desacuerdo, el 12 de agosto de 2024, IP Motive presentó una *Moción Solicitando Reconsideración a Resolución Enmendada (6 de agosto de 2024),*[6] la cual no fue considerada por el DACO dentro del término estatuido para ello.

Inconforme con la determinación de la agencia, el 5 de septiembre de 2024, la parte recurrente compareció ante nos y realizó el siguiente señalamiento de error:

> La agencia administrativa, DACO, cometió el error de no permitir la posposición de la vista administrativa para una fecha remota[,] aunque inmediata, o autorizar al abogado que comparece a participar por [v]ideo [c]onferencia. Esto constituye una violación al debido proceso de ley, y privó a la [p]arte [r]ecurrente de participar activamente en la [v]ista [a]dministrativa y defender su postura en cuanto a las reclamaciones de la [p]arte [r]ecurrida. La acción de Tribunal Administrativo fue caprichos[a] y carente de fundamento legal.

Evaluado lo anterior, ordenamos a la parte recurrida presentar su alegato en oposición conforme la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. Ha transcurrido mayor término a lo concedido sin que la recurrida haya acreditado escrito alguno ante esta Curia, por lo que, según

---

[5] Apéndice del recurso, págs. 2-4.
[6] Íd., págs. 19-20.

advertido, procedemos a resolver sin el beneficio de su comparecencia.

## II

## A

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024; *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, y *Super Asphalt v. AFI y otro,* supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 127; *Torres Rivera v. Policía de PR,* supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. Bella Retail Group, Inc. y otros,* supra; *Rolón Martínez v. Supte. Policía,* supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud,* supra; *Torres Rivera v. Policía de PR,* supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores,* supra, pág. 217. Nuestro Máximo Foro ha expresado que esta

intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR,* supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

El Departamento de Asuntos del Consumidor (DACO) constituye el organismo administrativo cuyo principal propósito es defender, vindicar e implantar los derechos de las personas consumidoras en nuestra jurisdicción, mediante la aplicación de las leyes que asistan sus reclamos. Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341b; *Polanco v. Cacique Motors,* 165 DPR 156 (2005). A tenor con ello, la agencia está plenamente facultada para resolver las quejas y querellas promovidas por las personas ciudadanas en ocasión a que se transgredan las disposiciones legales que proveen para la protección de sus prerrogativas; ello, en cuanto a servicios adquiridos o recibidos del sector privado de la economía. A su vez, el DACO está facultado para conceder los remedios pertinentes mediante la debida adjudicación administrativa. 3 LPRA secs. 341h, 341i-1.

En virtud de lo anterior, mediante la aprobación del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), el organismo adoptó un esquema uniforme de reglas para la dilucidación de las controversias sometidas a su consideración. De este modo, la agencia ve regido el ejercicio de sus poderes respecto al proceso adjudicativo de que trate, por la aplicación de normas afines a la solución justa, rápida y económica de las querellas. Regla 1 del Reglamento Núm. 8034, *supra.* Las reglas contenidas en el referido precepto aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el DACO. Regla 3 del Reglamento Núm. 8034, *supra.* Toda resolución emitida por esta agencia otorgará el remedio que en derecho proceda, aun cuando la parte querellante no lo haya solicitado. Regla 27.1 del Reglamento Núm. 8034, *supra.* Ahora

bien, en la ejecución de sus facultades adjudicativas, la Regla 24 del Reglamento Núm. 8034, *supra*, expresamente adopta el principio administrativo sobre la aplicación subsidiaria de las reglas procesales y probatorias propias de los trámites judiciales, al disponer como sigue:

> Las Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo a los fines de la justicia.

Por otra parte, el Reglamento Núm. 8034, *supra*, esboza las condiciones en las que se llevará a cabo la celebración de una vista administrativa. Atinente a lo que nos ocupa, específicamente estatuye que las partes pueden solicitar la transferencia o suspensión de la vista inmediatamente que se conozca los fundamentos para esta y con no menos de cinco (5) días laborables de anticipación a la fecha señalada para la vista. Regla 21 del Reglamento Núm. 8034, *supra*. Ello, a menos que se trate de eventos no previsibles o fuera del control de la parte solicitante. *Íd.* Cualquier solicitud de transferencia de vista deberá estar debidamente fundamentada y, a su vez, deberá contener la evidencia que acredite las razones para la misma. *Íd.* Por igual, la parte solicitante deberá indicar tres (3) fechas alternas dentro de los quince (15) días siguientes a partir de la fecha señalada para la vista. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En la presente causa, la parte recurrente argumenta que el DACO erró al no permitir la posposición de la vista administrativa para una fecha posterior, o autorizar a su representación legal a participar de la vista por videoconferencia. Aduce que ello constituye una violación al debido proceso de ley. Sostiene, además, que el organismo administrativo la privó de participar activamente en la

vista administrativa y defender su postura en cuanto a las reclamaciones realizadas por la parte recurrida. A su vez, plantea que la acción del DACO fue caprichosa y carente de fundamento legal. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable y la prueba, confirmamos la *Resolución* administrativa recurrida. Nos explicamos.

Un examen sosegado del expediente que nos ocupa mueve nuestro criterio a resolver que no se hacen presentes los criterios legales que legitiman nuestra intervención respecto a lo dispuesto por el organismo administrativo concernido. Nuestro ordenamiento jurídico actual no obliga a un ente administrativo a conceder una solicitud de transferencia de vista automáticamente, pues ello recae exclusivamente en la discreción de la agencia. A nuestro juicio, el manejo del caso desplegado por el DACO estuvo dentro de los parámetros de su sana discreción y no amerita nuestra intervención.

Cabe destacar que cuando un abogado sabe que no puede rendir una labor idónea, competente y que no puede prepararse adecuadamente sin causar un perjuicio irrazonable a su cliente, este no debe asumir la representación legal que se le solicita. Es decir, la ética le exige a todo abogado que rehúse representar a una parte cuando está consciente de que no puede defender sus intereses de forma adecuada. En este caso, la representación legal de IP Motive tenía conocimiento previo de la fecha pautada para la vista administrativa y que esta confligía con su calendario profesional. No obstante, el abogado decidió asumir la representación legal de IP Motive y enfrentarse a la posibilidad de que su petición de transferencia de vista fuera denegada y, en su consecuencia, tuviera que asistir a la vista en la fecha señalada por el organismo administrativo. Por tanto, el sano ejercicio de la discreción del DACO

al manejar el caso no constituye una actuación arbitraria, contrario a lo propuesto por la parte recurrente.

A su vez, la determinación aquí impugnada obedeció a un ejercicio razonable de apreciación de prueba por parte de la entidad recurrida, a la adecuada función de las facultades legales que le asisten, así como también, a una correcta interpretación y aplicación del derecho pertinente. En particular, la *Resolución* recurrida está basada en evidencia sustancial que no fue controvertida por la parte recurrente. En el caso de autos, la agencia dio credibilidad al testimonio de la parte recurrida de que fue engañada, además de no ser debidamente orientada al respecto.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible al DACO. Por tanto, en ausencia de prueba al contrario, solo podemos sostener su determinación.

**IV**

Por los fundamentos que anteceden, confirmamos la *Resolución* administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones